UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HOLLIE M. FARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00442-JMS-MJD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Hollie Farr filed applications for supplemental security income and disability insurance benefits on September 5, 2013, alleging a disability onset date of August 30, 2013. [Filing No. 14-6 at 11; Filing No. 14-6 at 46.] Her applications were denied initially, [Filing No. 14-3 at 22-23], and upon reconsideration, [Filing No. 14-3 at 46-47]. Administrative Law Judge Paul R. Armstrong ("ALJ") held a hearing on January 21, 2016. [Filing No. 14-2 at 32-80.] On February 9, 2016, the ALJ issued an opinion concluding that Ms. Farr was not disabled as defined by the Social Security Act. [Filing No. 14-2 at 15-31.] The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 14-2 at 2-7.] Ms. Farr timely filed her Complaint pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires

1

an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists to support the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Farr was forty-four years old at the time she applied for social security benefits. [Filing No. 16-3 at 2.] She has completed two years of college and previously worked in customer service and car part manufacturing and as a drive-through cashier, a fabricator, and a waitress. [Filing No. 14-6 at 28.][1]

---

[1] Both parties provided a detailed description of Ms. Farr's medical history and treatment in their briefs. [Filing No. 17; Filing No. 21.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Farr, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

3

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. Farr is not disabled. [Filing No. 14-2 at 15-31.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Farr has not engaged in substantial gainful activity since August 30, 2013, the alleged onset date. [Filing No. 14-2 at 20.]

- At Step Two, the ALJ found that Ms. Farr has the following severe impairments: "schizophrenia, affective disorder, anxiety, personality disorder, obesity, [and] bilateral knee arthritis status post bilateral knee replacements." [Filing No. 14-2 at 21.]

- At Step Three, the ALJ found that Ms. Farr does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 14-2 at 21-22.]

- At Step Three but before Step Four, the ALJ found that Ms. Farr has the RFC to "perform light work . . . where the claimant lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday. The claimant can perform simple, unskilled work . . . , with no public contact work, and with no more than occasional/superficial contact with supervisors and co-employees." [Filing No. 14-2 at 22 (citations omitted).]

- At Step Four, the ALJ concluded, after considering Ms. Farr's age, education, work experience, and RFC and relying on the testimony of the vocational expert ("VE"), that Ms. Farr is capable of performing her past relevant work as a machine operator. [Filing No. 14-2 at 25-26.]

- Though the ALJ found that Ms. Farr could perform her past relevant work, the ALJ proceeded to Step Five to determine, in the alternative, whether Ms. Farr could perform other jobs that exist in substantial numbers in the national economy. The ALJ found that Ms. Farr could work as a final inspector, touch up inspector, and circuit board screener. [Filing No. 14-2 at 29-30.]

Ms. Farr asked the Appeals Council to review the ALJ's decision, but that request was denied, making the ALJ's decision the final decision of the Commissioner subject to judicial review. [Filing No. 14-2 at 2-7.] Ms. Farr timely filed this civil action pursuant to 42 U.S.C § 405(g), asking the Court to review her denial of benefits. [Filing No. 1.]

### III.
### DISCUSSION

Ms. Farr argues that the ALJ failed to evaluate all of the opinion evidence; failed to account for Ms. Farr's limitations in concentration, persistence, or pace in her RFC; and erred in discrediting Ms. Farr's allegations. The Court addresses each issue in turn.

**A. Opinion Evidence**

Ms. Farr first argues that the ALJ selectively considered one Global Assessment of Functioning ("GAF") score while ignoring four others. [Filing No. 17 at 14-15.] Ms. Farr further argues that the ALJ provided a flawed explanation for rejecting the one GAF score he considered. [Filing No. 17 at 15-17.]

In response, the Commissioner argues that any error in failing to discuss the specific GAF scores was harmless because the reasoning the ALJ gave for discrediting the one GAF score applies to all of the GAF scores. [Filing No. 21 at 11-13.] The Commissioner further argues that the ALJ properly discounted the one GAF score he considered. [Filing No. 21 at 11-12.]

In reply, Ms. Farr reiterates her arguments and argues that the ALJ's failure to consider the other GAF scores was not a harmless omission.

GAF scores, though recently discontinued by the American Psychiatric Association, were once regularly used to "assess severity of symptoms and functional level" on a scale of 0 through 100. *Yurt v. Colvin*, 758 F.3d 850, 853 (7th Cir. 2014). GAF scores are "useful for planning treatment, and are measures of both severity of symptoms and functional level," though the "score does not reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). While an ALJ is not required to give specific "weight to individual GAF scores," *Yurt*, 758 F.3d at 860, the ALJ's selective consideration of GAF scores "in context [may] help[] reveal the ALJ's insufficient consideration of all the evidence," *Bates v. Colvin*, 736 F.3d 1093, 1099 n.3 (7th Cir. 2013). In addressing GAF scores, the ALJ should apply the factors generally applicable to evaluating other opinion evidence. *See, e.g.*, *Carter v. Colvin*, 2016 WL 491640, at *4 (N.D. Ind. 2016) ("[T]he Social Security Administration still considers GAF scores to be opinion evidence."). These include treatment length and frequency, consistency with other medical evidence, support and explanation for the opinion, and the expertise of the opinion source. 20 C.F.R. § 404.1527(c); S.S.R. 06-03P, 2006 WL 2329939, at *4-5 (Aug. 9, 2006). As with all opinion evidence, the ALJ may not "ignore or discount evidence favorable to [the claimant's] claim," including where "GAF scores from multiple physicians suggest[] a . . . lower level of functioning than that captured by the ALJ's hypothetical and mental RFC." *Yurt*, 758 F.3d at 860.

As Ms. Farr explains, various medical practitioners have assigned GAF scores following periods of observation or treatment. The first is from Ms. Farr's two-week involuntary stay at a hospital in October 2013, during which Sajal Bose, M.D., assessed Ms. Farr at admission with "Current [GAF], 25; highest past year, 50," [Filing No. 14-8 at 6], and at discharge with a GAF

score of 50, [Filing No. 14-8 at 8]. On November 5, 2013, therapist Melissa Dreher, M.S., conducted an examination and assigned a GAF score of 40. [Filing No. 14-9 at 35.] This was the lone GAF score considered by the ALJ. [Filing No. 14-2 at 8.] On August 18, 2014, Shannon M. Holt, L.P.N., saw Ms. Farr for a medication review appointment and assigned a GAF score range of 40-42. [Filing No. 14-10 at 65.] Nurse Holt assessed Ms. Farr with a "GAF Highest in Year" of 44. [Filing No. 14-10 at 65.] Finally, on September 9, 2015, after nearly two years of outpatient behavioral therapy, Steven Fekete, M.D., observed at discharge that Ms. Farr had "[l]ittle change from admission" and assessed a current GAF score of 40 and a "Highest in Year" GAF score of 46. [Filing No. 14-11 at 22-23.] The GAF scores were assessed as part of larger treatment records, accompanied by narratives reflecting Ms. Farr's history, condition, and diagnoses.

Ms. Farr's lowest GAF score of 25 falls within the range attributed "to behavior that is 'considerably influenced by delusions or hallucinations *or* serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) *or* inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).'" *Yurt*, 758 F.3d at 853 (emphasis in original) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. text revision 2000) [hereinafter "DSM-IV"]). Her GAF scores of 40 correspond with:

> "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant)" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed [woman] avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

*Czarnecki v. Colvin*, 595 Fed. App'x 635, 639 n.5 (quoting DSM-IV at 34). Finally, the GAF scores between 41 and 50 suggest "[s]erious symptoms . . . *or* any serious impairment in social,

7

occupational, or school functioning (e.g., no friends, unable to keep a job)." *Yurt*, 758 F.3d at 853 (alterations and emphasis in original) (quoting DSM-IV at 32).

The ALJ's analysis of the GAF scores, in its entirety, provides as follows:

> The claimant's counsel assigned the claimant a global assessment of functioning ("GAF") score of 40 (Exhibit 3F/7). However, a GAF score, while opinion evidence, is not standardized and varies from clinician to clinician (See Instruction AL-13066 issued 07/22/2013), and is of little value unless the clinician explains the reasons behind the GAF rating. A GAF score additionally has no correlation and the "B" criteria in the mental disorders listings. The undersigned considered this GAF score and finds that it does not necessarily contradict findings contained above, but there is no explanation as to how it was determined (Exhibit 3F/7). For those reasons, the GAF score is granted very little weight.

[Filing No. 14-2 at 8.]

The ALJ's perfunctory rejection of Ms. Dreher's November 2013 GAF score perhaps on its own may not be reversible error, given that GAF scores on their own are "insufficient to overturn an ALJ's finding of no disability." *Bates*, 736 F.3d at 1099 n.3. But, as in *Yurt*, "the problem here is not the failure to individually weigh the low GAF scores but a larger general tendency to ignore or discount evidence favorable to [Ms. Farr's] claim, which included GAF scores from multiple physicians." 758 F.3d at 860. As Ms. Farr points out, the ALJ failed to even mention the four other GAF assessments that produced scores ranging from 25 to 50—all fairly consistent with the score assessed by Ms. Dreher. As even the Commissioner appears to recognize, [Filing No. 21 at 12], the failure to address this opinion evidence was error.

However, the Court cannot conclude, as the Commissioner suggests, that the failure to address these additional scores is harmless. An ALJ's error is harmless only where the Court can predict with "great confidence what the ALJ would do on remand." *McKinzey v. Astrue*, 641 F.3d 884, 982 (7th Cir. 2011). Each of the ignored scores was accompanied by treatment records that an ALJ may readily find adequately support the assigned GAF score. Dr. Fekete, for example, following 22 months of outpatient therapy, assigned a GAF score of 40 and a "Highest in Year"

8

score of 46, and observed that Ms. Farr "[p]rogress[ed] more slowly than expected" and exhibited "[l]ittle change from admission." [Filing No. 14-11 at 22-23.] Moreover, each of these scores lends credence not only to Ms. Dreher's rejected score, but also to Ms. Farr's testimony of her mental health issues. [*See, e.g.*, Filing No. 14-2 at 50-52 (testimony describing panic attacks during failed attempt to work at McDonald's, despite working at night outside of the presence of customers); Filing No. 14-2 at 58 (describing fear of people watching her in her apartment and need to keep curtains closed at all times).] Finally, Ms. Farr's most recent GAF score of 40, dated September 2015, as explained above reflects "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Czarnecki, 595 Fed. App'x at 639 n.5*. This assessment, roughly contemporaneous with the ALJ's February 2016 decision, is one of several records that undermine the ALJ's conclusion that "recent treatment notes generally showed stability." [Filing No. 14-2 at 24; *compare, e.g.*, Filing No. 14-11 at 4 (treatment record from January 2016 observing "[n]o significant improvement in symptoms"; assessing Ms. Farr with "depressed, sad and unmotivated" affect; and increasing prescription dose).] Remand is therefore required to allow the ALJ to consider all of the relevant evidence of Ms. Farr's mental health condition, including the ignored GAF scores, in the first instance.

    **B. Remaining Issues**

Because the Court has already concluded that remand is required for the ALJ to consider all of the record evidence, the Court summarily addresses the remaining issues raised by Ms. Farr.

First, Ms. Farr argues that the ALJ failed to incorporate the assessed limitations in concentration, persistence, or pace in the hypothetical posed to the VE and in Ms. Farr's RFC. As the ALJ must revisit his RFC determination on remand, the ALJ should take care to ensure all

assessed limitations in concentration, persistence, or pace are reflected with appropriate RFC restrictions. *See, e.g.*, *Yurt*, 758 F.3d at 857 ("[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. This includes any deficiencies the claimant must have in concentration, persistence, or pace.").

Finally, the Court agrees with Ms. Farr that the ALJ's credibility assessment must be revisited on remand. As already discussed, the ALJ ignored medical opinion evidence that supports Ms. Farr's allegations. Additionally, while complimenting Ms. Farr at the hearing on her good work record, [Filing No. 14-2 at 54 ("[Y]ou got a really nice work history.")], the ALJ discredited her for receiving unemployment benefits, remarking that it showed "that the claimant was looking for work, and held herself out as able to work after the date the claimant alleges she became disabled." [Filing No. 14-2 at 24.] The Seventh Circuit has held that while unemployment benefits may be given "some consideration," "attributing a lack of credibility to such action is a step that must be taken with significant care and circumspection. All of the surrounding facts must be carefully considered." *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014). Even more recently, the Seventh Circuit has observed that such "logic is backward: a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability. And, as we have explained, a claimant's desire to work is not inconsistent with her inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

The ALJ failed to engage with any of the "surrounding facts," including the very specific circumstances under which Ms. Farr agreed to work at McDonald's. As Ms. Farr testified at the hearing, "Well, they let me work night shift only, with only four people, with a manager that I knew from before. I would work only the grill and the sandwich area, and I didn't have to deal

with customers, or be in an area that was crowded." [Filing No. 14-2 at 51.] Even despite those circumstances, Ms. Farr experienced panic attacks that led her to miss work; she was terminated after only working about six months. [Filing No. 14-2 at 40.] These are hardly facts that demonstrate a capacity for fulltime employment. Ms. Farr's demonstrated desire to continue working does not provide a basis to discredit her complaints, and the ALJ should take care on remand to place any discussion of her unemployment benefits in its proper context.

As the Seventh Circuit has explained, "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Any decision on remand to credit or discredit Ms. Farr's testimony based on treatment notes showing "stability," [Filing No. 14-2 at 24], must likewise account for the evidence reflecting instability and mental health difficulties, including but not limited to the evidence discussed in this opinion.

### IV.
#### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Farr's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 11/3/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**